## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 12 2020, 9:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael W. Phelps
Stewart Phelps Wood
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Blaire M. Evans
State Farm Litigation Counsel
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kimberly A. Stewart,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Dianna N. Randle,<br>*Appellee-Defendant.* | March 12, 2020<br><br>Court of Appeals Case No.<br>19A-CT-2270<br><br>Appeal from the Marion Superior Court<br><br>The Honorable James B. Osborn, Judge<br><br>Trial Court Cause No.<br>49D14-1704-CT-14960 |

**Najam, Judge.**

## Statement of the Case

[1]     Kimberly Stewart appeals the trial court's denial of her motion to correct error after a jury entered a verdict in favor of Dianna Randle on Stewart's complaint

alleging that Randle had negligently caused a car accident. Stewart presents a single issue for our review, namely, whether the evidence presented at trial supported the tender of two verdict forms to the jury, one finding for Randle and the other finding for Stewart. We affirm.

## Facts and Procedural History

On May 1, 2015, Stewart was stopped in traffic on Lafayette Road in Indianapolis when Randle failed to stop and collided with Stewart's vehicle from the rear at low speed. The rear of Stewart's vehicle was "a bit dented in" as a result of the impact. Tr. Vol. 2 at 53. Stewart felt "stunned" and "confused" after the accident, but she did not seek medical treatment that day. *Id.* at 59. The next day, which was a Saturday, Stewart had a "headache and just some pains." *Id.* at 62. The following Monday, Stewart called her doctor, Dr. Allison Wright, and made an appointment for May 13. At that appointment, Stewart reported having a headache and neck pain. Dr. Wright diagnosed Stewart with whiplash and muscle spasms in her neck and trapezius muscles. Dr. Wright advised Stewart to take Aleve to treat her symptoms.

Prior to the May 2015 accident, in 2012 and 2013 Stewart had sought medical treatment for pain in her left shoulder and numbness in her left arm. An MRI of Stewart's neck in October 2013 showed "mild spondylitis changes of the cervical spine most pronounced on the left at C6-C7" and "a minimal disc protrusion at C5-C6." *Id.* at 24. At some point in 2014, Stewart began seeing a massage therapist, Karen Higgs. And just prior to the May 2015 accident, Stewart saw Higgs for massage treatments in February and March 2015, with

reports of tightness in her upper back and neck. After the May 1, 2015, accident, Stewart saw Higgs for a massage on May 15 to treat her "neck in the upper shoulder area again." *Id.* at 38.

[4] Stewart saw Dr. Wright for a follow up visit on August 25, and Stewart reported that she was "still having left shoulder pain." *Id.* at 12. And at a visit in April 2016, Dr. Wright instructed Stewart to get an MRI of her cervical spine. Dr. Wright described the MRI results as follows:

> [It shows] some arthritis but also looks like she had disc [sic]. So, you have the vertebrae and you have the discs that are in between. One was kind of pushing out at C5-C6. Then at C6-C7, she had some arthritis changes too, and then a little bit of the disc was kind of pushed out on the left, and that would correspond to where most of her pain—pain was both sides but mainly on the left. . . .

*Id.* at 15. Dr. Wright referred Stewart to a pain specialist for further treatment.

[5] On April 13, 2017, Stewart filed a complaint against Randle alleging injuries proximately caused by Randle's negligence in the May 1, 2015, accident. During the ensuing jury trial, Stewart presented testimony from Higgs and from Dr. Wright, who testified that Stewart's injuries were "probably related" to the accident. Tr. Vol. 2 at 19. Randle conceded that the accident was her fault, but she challenged Stewart's evidence that Randle had proximately caused her alleged injuries. At the conclusion of the trial, over Stewart's objection, the trial court tendered two verdict forms to the jury, one finding in favor of Stewart and the other finding in favor of Randle. The jury returned a verdict in favor of

Randle. Stewart filed a motion to correct error, which the trial court denied. This appeal ensued.

## Discussion and Decision

[6] Stewart contends that the trial court erred when it tendered to the jury two verdict forms, one finding in favor of Stewart and the other finding in favor of Randle. Stewart maintains that the evidence was undisputed that Randle proximately caused her injuries, and, therefore, the trial court was required to tender a single jury verdict form in Stewart's favor with only the amount of damages to be determined by the jury. We review a trial court's decision regarding jury verdict forms for an abuse of discretion. *See Hrezo v. City of Lawrenceburg*, 81 N.E.3d 1146, 1158 (Ind. Ct. App. 2017).

[7] "In order to prevail on a claim of negligence the plaintiff must show: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury proximately caused by defendant's breach of duty." *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003). As Stewart correctly points out, Randle admitted liability in causing the rear-end accident on May 1, 2015. Accordingly, the only issue at trial was whether Randle proximately caused Stewart's alleged injuries. As this Court has observed,

> it is well settled that "Indiana subscribes to the general principle of tort law that all damages directly attributable to the wrong done are recoverable." *Russell v. Neumann-Steadman*, 759 N.E.2d 234, 237 (Ind. Ct. App. 2001). A plaintiff has the burden to

> prove by a preponderance of the evidence that the medical expenses that he incurred were a proximate result of the defendant's negligence. *See Matovich v. Rodgers*, 784 N.E.2d 954, 958 (Ind. Ct. App. 2003). Once that burden is met, "the law allows an injured plaintiff to recover the reasonable cost of necessary medical expenses." *Russell*, 759 N.E.2d at 237. The jury is not bound to award a plaintiff the exact amount of his medical expenses, but it may determine what amount is reasonable in light of the evidence. *See Dee v. Becker*, 636 N.E.2d 176, 181 (Ind. Ct. App. 1994).

*Spaulding v. Cook*, 89 N.E.3d 413, 421 (Ind. Ct. App. 2017), *trans. denied*.

[8] Here, Stewart maintains that, in light of Dr. Wright's testimony that Stewart's injuries were caused by the May 1, 2015, accident, the trial court was required to submit a single verdict form to the jury in favor of Stewart. Stewart asserts that her medical testimony was "undisputed" and supported a damages award. Appellant's Br. at 11.

[9] But Stewart ignores Dr. Wright's testimony acknowledging that Stewart's injuries were similar to those she had had in 2012 and 2013. When Randle cross-examined Dr. Wright at trial about the similarities in Stewart's symptoms pre- and post-accident, the following colloquy ensued:

> Q. . . . Does the indication [for the October 2013 MRI] say left arm and shoulder pain with numbness and tingling?
>
> A. Yes.
>
> Q. Okay. And it looks like they say on impression mild spondylitis changes of the cervical spine most pronounced on the left at C6-C7?

A. [Yes].

Q. And they say a minimal disc protrusion at C5-C6?

A. [Yes].

Q. Okay. Do those appear[] to be the same locations that are discussed in the MRI in July of 2016?

A. Yes, those are the two areas that they comment on.

Q. And in the July MRI it says progression of the mild disc degeneration. Would that be something you would expect to see some progression over the course of three years?

A. Yeah, I guess it's possible.

Q. Because the degeneration isn't something that gets better, correct?

A. Right.

Q. And an auto accident isn't the only thing that could make degenerated disc disease progress or become symptomatic?

A. Aging is usually what causes it.

Tr. Vol. 2 at 24. In addition, Dr. Wright was equivocal when she testified that the May 1, 2015, accident had caused Stewart's injuries, stating only that she "surmise[d]" that the findings on the 2016 MRI were "probably related" to the accident. *Id.* at 19. Finally, Higgs testified that she had provided massage therapy to Stewart prior to the May 1, 2015, accident to treat tightness in her shoulders, upper back, and neck.

[10] In light of the evidence that Stewart's injuries might not have been caused by the accident, we reject Stewart's assertion that the jury's verdict was unsupported by the evidence. In *Spaulding*, as here, the plaintiff argued that "the jury verdict [wa]s inadequate as a matter of law because the zero damages award [wa]s contrary to the evidence."[1] 89 N.E.3d at 420. On appeal, we affirmed the verdict in light of: the low impact of the accident; plaintiff's pre-existing conditions, which were similar to his alleged injuries caused by the accident; plaintiff's failure to seek immediate medical treatment; and his doctor's inability to testify "with absolute certainty that the accident" had caused plaintiff's claimed injuries. *Id.* at 423. We held that "the jury's determination that Spaulding was entitled to zero damages arising out of his accident with Cook [wa]s not outside the bounds of the evidence." *Id.*

[11] Likewise, here, we agree with Randle that the testimony of both Dr. Wright and Higgs supports a reasonable inference that Stewart's injuries were the result of a pre-existing condition and not the May 1, 2015, accident. Thus, there is evidence to support the jury's verdict for Randle. *See id.* Accordingly, we hold that the trial court did not abuse its discretion when it tendered both verdict forms to the jury, and the court did not abuse its discretion when it denied Stewart's motion to correct error.

---

[1] We note that, while Stewart asserts that the jury award of zero damages "warrants a new trial on damages," her argument on appeal is narrowly focused on whether the trial court abused its discretion when it tendered both verdict forms to the jury. Appellant's Br. at 9. Accordingly, we limit our analysis to that argument.

Affirmed.

Vaidik, J., and Tavitas, J., concur.